UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JASON HALPERN, | Case No. 2:15-CV-2037 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| GARY THARALDSON, | |
| Defendant(s). | |

Presently before the court is defendant Gary Tharaldson's ("Tharaldson") partial motion to dismiss. (ECF No. 28). Plaintiff Jason Halpern ("Halpern") filed a response (ECF No. 35), and Tharaldson filed a reply. (ECF No. 36).

**I.   Background**

Halpern and Tharaldson were part of a group of investors that invested in the acquisition of a property located in Las Vegas, Nevada, for the purpose of creating a master-planned residential community, which included a golf course. (*Id.* at 12). In order to purchase the property, the group obtained a $30 million loan, on which Tharaldson provided his personal guaranty. (*Id.*). As a result of the 2007-2008 financial crisis, the investors agreed that the property could not be developed further at that time. (*Id.*). However, the existing golf course could not support the payments on the loan, and the loan went into default. (*Id.*).

The loan was subsequently sold to a third party. (*Id.*). After this sale, there were multiple attempts by the investors to try to purchase the loan. (*Id.* at 13–14). While Halpern had nearly closed several attempts to purchase the debt, Tharaldson ultimately acquired the debt in order to extinguish his personal guaranty on the full $30 million. (*Id.* at 14).

**James C. Mahan**
**U.S. District Judge**

Tharaldson entered into a contract ("the contract"), on March 3, 2015, with Halpern and two of the other original investors. (*Id.*). The terms of the contract included that Tharaldson would provide one of the investors with consulting fees and then reimburse Halpern and the other investor for their costs incurred in negotiating their attempted purchase of the loan. (*Id.*).

The contract also included an option for either Halpern or his affiliate to acquire a 50 percent interest in the loan. (*Id.*). In order to acquire this 50 percent interest, Halpern needed to satisfy three conditions: (1) before the seventy-fifth day following the closing date, Halpern had to provide written notice to Tharaldson of his intention to acquire the interest; (2) Halpern was required to pay Tharaldson 50 percent of the purchase price under the loan purchase agreement together with interest thereon at an annual rate of 8 percent from the closing date through and including the date upon which such payment is made; and (3) Halpern needed to reimburse Tharaldson 50 percent of the reimbursement and the closing expenses. (*Id.*).

If these conditions were met, Halpern and Tharaldson would enter into a joint venture on "commercially reasonable terms." (*Id.* at 15). While not exhaustive, these terms included:

> (1) all decisions and governance with respect to the [l]oan [p]urchaser [(an entity created by Tharaldson)], the [l]oan, the [p]roperty, the budget, and the business plan and any all things in connection therewith will require the consent and approval of both [Tharaldson] and [Halpern]; and (2) a buy/sell provision on commercially reasonable terms in the event [Tharaldson] and [Halpern] are unable to agree on any particular decision; and (3) pari passu and pro rata capital contributions and returns/distributions to each party.

(*Id.*).

Halpern, through an associate, began conducting negotiations in April and May 2015, to convert the property into the previously-planned residential community. (*Id.* at 15–17). After beginning these negotiations, Halpern alleges that he "made several attempts to exercise his right pursuant to the contract;" however, every time he "expressed his interest" or "tried to exercise his right," "[Tharaldson] and those who work for [Tharaldson] made it abundantly clear that Halpern was not welcome in the partnership." (*Id.* at 17).

Halpern also describes further issues between the two parties that made consummation of the joint venture impossible prior to the seventy-fifth day following the closing date. (*Id.* at 17–18). Despite these issues, both parties claim that they were still amenable to the deal. (*Id.* at 18).

James C. Mahan
U.S. District Judge

1  They jointly agreed to extend Halpern's election period from May 26, 2015, to June 19, 2015, and memorialized the arrangement in a side letter. (*Id.*).

Halpern then alleges that Tharaldson refused to cooperate and "would fight Halpern over every term in a joint venture agreement." (*Id.*). As a result of this breakdown, Halpern filed the instant action on July 9, 2015, in the Supreme Court of the State of New York. (*Id.* at 10). The complaint alleges three causes of action: breach of contract, anticipatory breach, and breach of the covenant of good faith and fair dealing. (*Id.* at 18–20).

The suit was then removed to the United States District Court for the Eastern District of New York, and thereafter the suit was transferred to the District of Nevada. (ECF No. 12).

## II.   Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  *Id*. at 1950.  A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id*. at 1949.

James C. Mahan
U.S. District Judge

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id.* (internal quotations and alterations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III.  Discussion

  A. *Nevada choice-of-law rule*

The contract contains a choice-of-law provision, which states that it "will be governed and construed in accordance with the laws of New York, without giving effect to any conflicts of law principles." (ECF No. 1 at 25). Courts generally apply the law that the parties to the contract have chosen unless such choice-of-law provision offends public policy. *See Lauritzen v. Larsen*, 345 U.S. 571, 588–89 (1953) ("Except as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply."). However, when a court is sitting in diversity, it must apply the choice-of-law rules of the forum state, whether or not this honors the parties' expectations. *See, e.g. Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009); *Asian Am. Entm't Corp., Ltd. v. Las Vegas Sands, Inc.*, 324 Fed.Appx. 567, 568 (9th Cir. 2009).

Nevada provides parties with a wide latitude "to choose the law that will determine the validity and effect of their contract." *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Investors*, 95 Nev. 811, 603 P.2d 270, 273 (1979). However, this latitude is not unlimited and Nevada "uses a multi-factor test in order to determine whether to enforce a choice-of-law provision

James C. Mahan
U.S. District Judge

- 4 -

in a contract." *Progressive Gulf Ins. Co. v. Faehnrich*, 627 F.3d 1137, 1139 (9th Cir. 2010) (citing *Ferdie Sievers & Lake Tahoe Land Co.* 603 P.2d at 273). The relevant factors are as follows:

> "The parties must have acted in good faith, without an intent to evade the law of the state where the contract was formed; the situs of the chosen law must have a substantial relationship to the contract; and the terms of the contract may not contravene Nevada public policy."

*Id.*

There is no evidence that either party is attempting to circumvent the laws of the state where the contract was formed; indeed, the contract was formed in New York and the choice of law is New York law. (ECF No. 1 at 23, 25).

Next, in order to determine if the situs has a substantial relationship to the transaction, the court "considers the following factors from section 188 of the Restatement: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the parties' domicile, residence, nationality, place of incorporation, and place of business." *IPFS Corp. v. Carrillo*, No. 2:14–cv–00509–GMN–GWF, 2014 WL 3784261, at *2 (D. Nev. 2014). "A court applies the law of the state having the more substantial relation with the transaction unless public policy concerns outweigh that relation." *Id.*

The court finds that the restatement factors do not compel application of Nevada law. New York has a substantial relationship to the contract because Halpern is a citizen of New York. (ECF No. 1 at 12). While Tharaldson is a citizen of Nevada, he conducts business and owns property in New York. (*Id.*). The record indicates that all negotiations, drafting, and formation of the contract took place in New York. Finally, while the subject matter of the contract does expressly discuss the property located in Nevada, this single factor is not dispositive and the other factors weigh more heavily in favor of New York.

Because both parties agreed to the application of New York law and New York as a situs satisfies the Nevada multi-factor test, the court will apply New York law to the contract.

B. *Breach of contract claim*

In order to state a claim for breach of contract under New York law, the plaintiff must show: "(1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff,

James C. Mahan
U.S. District Judge

- 5 -

1  (3) defendant's failure to perform, [and] (4) resulting damage." *See, e.g. U.S. Nonwovens Corp. v.*
2  *Pack Line Corp.*, 4 N.Y.S.3d 868, 871 (N.Y. Sup. Ct. 2015). Furthermore, "no party can prevail
3  on a breach of contract claim if it has failed to satisfy all the specified conditions precedent." *Fahs*
4  *Const. Group, Inc. v. State*, 999 N.Y.S.2d 244, 246 (N.Y. App. Div. 2014). Finally, a contract
5  dispute can be dealt with in a motion to dismiss if the "contract's language is clear and
6  unambiguous." *See Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 349 (S.D.N.Y.
7  2013).

8  Neither party disputes the terms of the contract. Tharaldson instead argues that he neither
9  breached the contract nor owed any duties to Halpern that could have been breached because
10 Halpern did not satisfy necessary conditions precedent to the contract. (ECF No. 28 at 3–4).

11 Tharaldson correctly argues that, prior to exercising his option, Halpern had to satisfy the
12 three items described above. (ECF No. 1 at 24). If Halpern did not meet these preconditions for
13 the option, then the "formation of a contract between plaintiff and defendant" element would not
14 be satisfied and the instant action would not give rise to a breach of contract claim. While the
15 complaint sufficiently shows that Halpern satisfied the first requirement by providing notice of his
16 intent to exercise the option, there are no facts showing that he ever tendered or tried to tender the
17 funds required by the remaining two.

18 The closest that Halpern comes to pleading with sufficiency that he tendered the payments
19 is his statement in the complaint that he "made several attempts to exercise his right pursuant to
20 the [c]ontract" and that he "tried to exercise his right to acquire the 50 [percent] interest." (ECF
21 No. 1 at 17). Even if Halpern is alleging that he tried to proffer the required payments, he provides
22 no facts suggesting how or when he did so. These vague statements do not satisfy *Iqbal*'s
23 plausibility requirements to survive a motion to dismiss. FED. R. CIV. P. 12(b)(6).

24 In his response, Halpern does not argue that he ever paid or tried to pay the required sums;
25 his contention is that the "[d]efendant's misconduct rendered it impossible for Halpern to fully
26 perform under the [c]ontract." (ECF No. 35 at 8). Halpern contends that, based on New York law,
27 the promisor himself "cannot rely on the failure of another to perform a condition precedent where

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  he has frustrated or prevented the occurrence of the condition." *A.H.A. Gen. Constr., Inc. v. N.Y.*
2  *City Hous. Auth.*, 699 N.E.2d 368, 374 (N.Y. 1998).

3  Halpern contends that Tharaldson frustrated the occurrence of the condition through his
4  "insistence upon new (commercially unfavorable) terms 'made it impossible for Halpern to pay
5  the [c]onsideration necessary to exercise his option.'" (ECF No. 35 at 8). He further alleges that
6  Tharaldson's employees also discouraged Halpern from exercising his option. (ECF No. 28 at 7).
7  Halpern finally states that he could not have been expected to provide his consideration "when
8  [Tharaldson] unilaterally made material changes to the terms of the joint venture." (ECF No. 35 at
9  9). However, the joint venture did not come into any legal existence until Halpern satisfied those
10 preconditions. *See* (ECF No. 1 at 24). Since the joint venture was not yet in existence, Tharaldson's
11 alleged actions at most amount to threats to make material changes to the future joint venture.

12 The court is unpersuaded that Tharaldson's actions made it impossible for Halpern to
13 tender the required consideration and, thus, create a contractual duty for Tharaldson.
14 Halpern cites to several cases, which hold that defendants may not frustrate another party's ability
15 to perform contractual preconditions in order to absolve themselves of their own contractual duties.
16 *See A.H.A. Gen. Constr., Inc.*, 699 N.E.2d at 374; *Tukas Co. v. Continuum Co., LLC*, No. 00 Civ.
17 2762(DC), 2003 WL 1746731 (S.D.N.Y. Mar. 31, 2003). However, there is no allegation here that
18 Tharaldson's actions effectively prevented from Halpern tendering his consideration. Halpern has
19 failed to demonstrate why providing said consideration would have been futile. Even if Tharaldson
20 had offered new, unfavorable terms for the joint venture, this should not have prevented Halpern
21 from tendering the funds. Once the funds were tendered and the option was triggered, both sides
22 would have been on an equal footing to negotiate.

23 Accordingly, the court dismisses the breach of contract claim without prejudice.

*C. Breach of the covenant of good faith and fair dealing*

25 Under New York law, every contract is imbued with an implied covenant of good
26 faith and fair dealing. *See, e.g. Alter v. Bogoricin*, No. 97 CIV. 0662(MBM), 1997 WL 691332
27 (S.D.N.Y. 1997). The covenant requires that "neither party to a contract shall do anything which
28 has the effect of destroying or injuring the right of the other party to receive the fruits of the

**James C. Mahan**
**U.S. District Judge**

- 7 -

contract." *Hard Rock Café Intern., (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011). Any implied obligation must, however, be "consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Spread Enters., Inc. v. First Data Merchant Serv. Corp.*, No. 11–CV–4743 (ADS)(ETB), 2012 WL 3679319, at *3 (E.D.N.Y. 2012).

However, under New York law, a breach of this implied duty is simply a breach of the underlying contract. *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002); *see also Hard Rock Café Intern*, 808 F. Supp. 2d at 567 ("New York law does not 'recognize a separate cause of action for breach of the implied covenant of good faith and a breach of contract on the same facts.'"). Thus, any claim for breach of the implied covenant of good faith and fair dealing "can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14–CV–9839 (JMF), 2015 WL 1809001, at *4 (S.D.N.Y. 2015). *See also Conesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (dismissing the breach of implied covenant claim because "the predicate conduct for the claims is the same….").

Tharaldson argues that even assuming *arguendo* that Halpern's allegations for the breach of the implied covenant set forth in the complaint are true, they still "form the basis for a breach of contract or anticipatory breach claim." (ECF No. 28 at 5). The court, therefore, must dismiss the claim as duplicative of either the breach of contract claim or the anticipatory breach claim. (*Id.* at 5–6).

Halpern, in response, argues first that the court should not dismiss the breach of the implied covenant claim in order to allow for alternative pleading. (ECF No. 35 at 6). Halpern argues that Federal Rule of Civil Procedure 8(a)(3) allows him to plead this claim in the alternative to his breach of contract claim. (*Id.*).

New York law is clear that claims for breach of contract and breach of the implied covenant are duplicative and cannot be pled in the alternative when based on the same predicate facts. *See*

**James C. Mahan**
**U.S. District Judge**

- 8 -

*Boart Longyear v. Alliance Indus. Inc.*, 869 F. Supp. 2d 407, 420 (S.D.N.Y. 2012) ("While I have previously held that a duplicative implied covenant of good faith and fair dealing claim may stand as an alternative cause of action, more recent Second Circuit case law indicates that dismissal for redundancy is the appropriate outcome here."); *see also Spread Enters.*, No. 11–CV–4743 (ADS)(ETB), 2012 WL 3679319, at *5 ("While in most cases a plaintiff may plead even inconsistent claims pursuant to Fed. R. Civ. P. 8(d), in the context of a claim for breach of the covenant of good faith and fair dealing, claims are not in the alternative when they are based on the exact same allegations."). Halpern may not plead the breach of the implied covenant claim if there are no separate factual allegations underlying the claim.

Halpern argues that "the factual predicates for the breach of contract claim and the breach of the implied covenant claim are distinct;" therefore, the claims are not subject to dismissal for duplicity. (*Id.* at 7). First, it is clear that the same damages are sought for all three claims; Halpern alleges a damages figure of "$20 million, plus interest." (ECF No. 1 at 10–11). Halpern has not shown that the breach of the implied covenant claim seeks a relief that "is not intrinsically tied to the damages allegedly resulting from the breach of contract." *Grant & Eisenhofer, P.A.*, 2015 WL 1809001 at *4. Thus, Halpern's alleged damages for each claim do not provide a basis for the court to separate Halpern's claims.

In order for the breach of the implied duty claim to survive, Halpern must sufficiently distinguish the factual predicates for the two claims. In his complaint, Halpern states that the breach of the implied covenant claim is based on Halpern's having "the right to expect that [Tharaldson] would not act in bad faith by (i) refusing to enter into the joint venture with Halpern; (ii) disregarding Halpern's right to enter into a venture with [Tharaldson] on a pari passu basis with joint control; and (iii) seeking to enter into an agreement on commercially unfavorable terms to Halpern." (ECF No. 1 at 11).

As the defendant correctly notes, these three alleged breaches of the implied covenant are simply breaches of explicit terms of the contract. (ECF No. 28 at 6). The contract provides that if Halpern satisfied the three preconditions to the joint venture, Tharaldson "[would] enter into a *joint venture* agreement *on commercially reasonable terms*" and this venture was to include "*pari*

James C. Mahan
U.S. District Judge

- 9 -

*passu* and pro rata capital contributions and returns/distributions to each party." (ECF No. 1 at 24) (emphasis added). The court thus finds that Halpern has simply alleged a breach of specific contractual terms as the factual basis for his breach of the implied covenant of good faith and fair dealing. Since New York law is clear that the underlying facts for the claims must be distinct, Halpern has not alleged with sufficiency a claim for breach of the implied covenant of good faith and fair dealing.

Accordingly, the court dismisses Halpern's claim for breach of the implied covenant of good faith and fair dealing without prejudice.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Gary Tharaldson's partial motion to dismiss (ECF No. 28) be, and the same hereby is, GRANTED consistent with the foregoing.

DATED July 18, 2016.

_____
UNITED STATES DISTRICT JUDGE